The Honorable Ken L. Foster, Chairman Palm Beach Board of County Commissioners Post Office Box 1989 West Palm Beach, Florida 33402-1989
Dear Chairman Foster:
On behalf of the Palm Beach County Commission, you ask the following questions:
1. May a county enact an ordinance authorizing the use of unmanned cameras at traffic intersections for the purpose of issuing citations for violations of section 316.075, Florida Statutes?
2. If so, may the county serve the traffic citation by mail?
In sum:
1. The use of unmanned cameras to record violations of section316.075, Florida Statutes, is not precluded by state law, and represents an innovative approach to detect and deter the dangerous conditions created by drivers who disobey traffic signals. The statutes governing the enforcement and citation for violations of section 316.075, Florida Statutes, however, have not been amended to allow the photographic record from unmanned cameras monitoring intersections to be used as the sole basis for issuing citations.
2. While the response to question one makes a response to this question unnecessary, it would appear that the service of traffic citations by mail must be authorized by statute.
Question One
Chapter 316, Florida Statutes, constitutes the Florida Uniform Traffic Control Law and was enacted to make uniform traffic laws applicable throughout the state and its counties.[1] Section316.075, Florida Statutes, prescribes uniform meanings to be applied to the red, yellow and green lights that may be used for controlling vehicles and pedestrians. Pertinent to your inquiry, a steady red light indicates that vehicular traffic facing the signal "shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until a green indication is shown. . . ."[2]
Counties have been given original jurisdiction to control traffic over all streets and highways located within their boundaries, except all state roads and roads under the jurisdiction of municipalities.[3] Section 316.002, Florida Statutes, however, precludes counties from passing ordinances in conflict with the provisions of Chapter 316.
The traffic control law enumerates several areas that local authorities are authorized to address, including, "[r]egulating, restricting, or monitoring traffic by security devices or personnel on public streets and highways, whether by public or private parties. . . ."[4] (e.s.) Use of an unmanned camera to detect vehicles that do not remain stopped and standing at a steady red light as required by section 316.075(3)(a), Florida Statutes, would appear to fall within this specifically granted authority.
It remains questionable, however, whether an unmanned "electronic traffic infraction detector" may independently be used as the basis for issuing citations for violations of these traffic laws.
Section 316.640(2), Florida Statutes, vests the sheriff's office of each county with the authority to enforce all of the traffic laws of this state on all streets and highways throughout the county where the public has a right to travel. The sheriff's office may employ traffic infraction enforcement officers with specified training requirements who may issue citations when the officer "observes the commission of a traffic infraction or, in the case of a parking infraction, . . . observes an illegally parked vehicle. . . ."[5] (e.s.)
Section 316.645, Florida Statutes, states:
"A police officer who makes an investigation at the scene of a traffic accident may arrest any driver of a vehicle involved in the accident when, based upon personal investigation, the officer has reasonable and probable grounds to believe that the person has committed any offense under the provisions of this chapter or chapter 322 in connection with the accident." (e.s.)
Thus, in order for citations for violations of traffic control laws to be issued, the statutes appear to require that an officer enforcing the traffic law observe or have personal knowledge of the particular infraction that serves as the basis for issuing the citation.
A similar situation arises when law enforcement officers use electronic speed measuring devices to detect motor vehicles exceeding the speed limit. Section 316. 1906(2), Florida Statutes, makes evidence of the speed of a vehicle measured by any speed-measuring device inadmissible in any proceeding related to an alleged violation of speed limit laws unless the officer, among other specific requirements, "[h]as made an independent visual determination that the vehicle is operating in excess of the applicable speed limit."
During the 1996 legislative session, Senate Bill 94 was introduced to provide for up to ten traffic control signal photo-monitoring device demonstration projects to be approved by the Department of Highway Safety and Motor Vehicles (DHSMV) in conjunction with the Department of Transportation (DOT).[6] A traffic control signal photo-monitoring device involves the use of cameras to capture the image of motor vehicles at the time they fail to stop at a steady red traffic light.[7] Under the proposed law, DHSMV and DOT were to establish requirements for the photo-monitoring devices and such devices would be required to be tested routinely according to procedures established by DHSMV and DOT.[8]
Senate Bill 94, which did not pass, provided specific notice requirements to inform the public of the project, limited the consequences for initial violations (providing for only warning notices during the initiation of the project), and prescribed a civil penalty with a $52 fine and no other consequences when a citation for violation was ultimately issued.[9] Moreover, the bill stated that a uniform traffic citation could not be used as the citation for a violation of the newly enacted law and that the normal procedures for enforcing traffic citations would not apply to enforcement actions undertaken pursuant to the law.[10]
The careful drafting of these safeguards in Senate Bill 94 supports the conclusion that legislative authorization would be required for using photo-monitoring devices as a means to enforce traffic law violations.[11] Regrettably, these advancements in technology have not been adequately addressed by the Legislature so that law enforcement may more efficiently and thoroughly target those who create dangerous conditions by violating the traffic laws of this state.
Accordingly, it is my opinion that while nothing precludes the use of unmanned cameras to record violations of section 316.075, Florida Statutes, a photographic record of a vehicle violating traffic control laws may not be used as the basis for issuing a citation for such violations. Rather, independent observation or knowledge of the infraction by the officer issuing the citation is required.
Question Two
In light of the conclusion in question one, it is not necessary to respond to this question as it relates to the mailing of a citation for violation of section 316.075, Florida Statutes. A general discussion of how citations may be served, however, may provide some assistance under other circumstances.
Violations of Chapter 316, Florida Statutes, with the exception of criminal offenses enumerated therein, are noncriminal infractions for which individuals are cited.[12] Section 318.14(2), Florida Statutes, states:
"Except as provided in s. 316.1001(2), any person cited for an infraction under this section must sign and accept a citation indicating a promise to appear. The officer may indicate on the traffic citation the time and location of the scheduled hearing and must indicate the applicable civil penalty established in s.318.18."[13]
As an exception to this general requirement that a person sign and accept a citation, section 316.1001(2), Florida Statutes, allows a citation for failure to pay a prescribed toll to be issued by certified mail, return receipt requested, to the address of the registered owner of the motor vehicle involved in the violation.[14] A review of Chapter 316, Florida Statutes, has not revealed any analogous provision for the mailing of citations for violation of section 316.075, Florida Statutes.
Accordingly, it is my opinion that service of traffic citations for violations of Chapter 316, Florida Statutes, may be made by mail only when authorized by statute.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, s. 316.002, Fla. Stat. (1995).
[2] Section 316.075(3), Fla. Stat. (1995), contains specific exceptions for turning right on red after stopping and left on red from a one-way street intersecting a one-way street with traffic moving to the left.
[3] Section 316.006(3)(a), Fla. Stat. (1995).
[4] Section 316.008(1)(w), Fla. Stat. (1995).
[5] Section 318.141(2)(a), Fla. Stat. (1995).
[6] See, s. 1, CS for SB 94, 1996 Legislative Session.
[7] See, s. 1(1), CS for SB 94, 1996 Legislative Session.
[8] See, s. 1(3), CS for SB 94, 1996 Legislative Session.
[9] See, s. 1(4), CS for SB 94, 1996 Legislative Session.
[10] See, s. 1(5), CS for SB 94, 1996 Legislative Session.
[11] Cf., s. 316.1001(2)(b), Fla. Stat. (1995), authorizing the issuance of a citation by certified mail, return receipt requested, to the address of the registered owner of a vehicle that is involved in a violation of the noncriminal infraction of failing to pay a prescribed toll.
This office has been advised that the City of Fort Meade, Florida, is participating in a federally funded red light camera detection demonstration program in which motorists who are recorded running a red light in violation of s. 316.075, Fla. Stat., are mailed a warning, but no citations are issued. Chief George Ferris of the Fort Meade Police Department has indicated that, at times during the demonstration project, officers were placed at the intersections where cameras were operating, and citations were issued to motorists who ran the light.
[12] See, s. 318.14(1), Fla. Stat. (1995).
[13] Section 318.14(3), Fla. Stat. (1995), makes it a misdemeanor of the second degree for a person to willfully refuse to accept and sign a summons.
[14] Section 316.1001(2)(b), Fla. Stat. (1995), requires that the citation be mailed within 14 days after the date of the violation and the registered owner of the vehicle must be advised of the option to pay a $30 fine to the clerk of the court, in which case adjudication will be withheld and no points may be assessed against the owner's driving record.